Weichsel v. JP Morgan Chase Bank, Appellate No. 21-3371. I think we're going to just need just a moment. May it please the Court, my name is Brian Bromberg and I represent the plaintiff appellant, Stuart Weichsel, in this appeal. With – I'd like to reserve five minutes for rebuttal, Your Honors. Now, there are two issues that were raised below. There's the issue of standing, which we won on. And there's also the second issue on the merits. I'd like to jump right to the merits question. We're relying on both, Your Honor. So there was no need to get to the second rung. I don't believe so. I'd have to go back and double check, but we relied primarily – once we had that first rung, there was no point to going to the second rung. I think Judge Amber might have a question. Just a quick – and maybe it bridges the two. Why did Mr. Weichsel pay the annual fee after receiving the January billing statement that specifically noted that there was a separation between the 425 and the 525? Well, there's nothing in the record as to that, but he was relying upon the initial renewal notice. What about the billing statement itself? The billing statement itself was ambiguous. The billing statement itself said annual membership fee and broke down. It had the 450 number and the $75 number, but there was nothing clearly in it indicating that the – Annual membership fee, 450. Annual membership fee, 75. So there's a difference, and he would know, having done the 450 for himself and the 75 for the additional person, that that's what it is. I mean, if that wasn't there yet, it's good, but it's right there on – just below the account activity on fees charged. Yes, but, Your Honor, there's an ambiguity there. There's an ambiguity there. Yes, there's an ambiguity. It doesn't say additional card fee. It doesn't say anything of that nature. And he had been informed. What would he have thought that was? It's hard to speculate, Your Honor. There's nothing in the record as to what he thought that was. In his complaint, he had the – I thought in his complaint, or certainly in the brief I saw, that he acknowledged having a primary card and an authorized user card. Correct? Yes. Yes, but in the complaint, Your Honor, he alleged that he was relying upon the $525 charge in the renewal notice. That's a different question than what Judge Ambrose is asking you. The $525 annual membership fee, there's nothing in the record regarding his reliance on it or lack of reliance on it. Well, he entered a contract at the beginning, and there was a term in that contract that if you want a primary card and an authorized user card, the total is 525. And the renewal notice only requires that they disclose what the underlying term was at the time the account was renewed. So he knew at the time the account was being renewed, which was the December, January, February period, to keep the account as he had agreed under those terms would have cost him 525. So how could he be confused, going back to Judge Ambrose's question, by the statement from February? Your Honor, that was the district court's position, was that there was a requirement of only requiring the 525. I believe the district court referred to paragraph 3 of the commentary, the official interpretation. The question was, how was he confused? In the complaint, he advised that he was confused as a result of the renewal notice. There's nothing as to any impression he may have had upon receiving the February notice, February statement. But in any event, the district court held, with respect to the terms of renewal position, the district court cited to paragraph 3 of the official interpretation of 9E. And actually, I believe the district court got it wrong there. It actually says in full, terms of renewal, renewal notice must reflect the terms actually in effect at the time of renewal. For example, a card issuer that offers a preferential annual percentage rate to employees during their employment must send a renewal notice to employees, disclosing the lower rate actually charged to employees, although the card issuer may also show the rate charged to the general public. So in other words, it doesn't really stand for the position that the district court said that it stands for. It doesn't – it's completely silent on the question of itemization. And it's actually the – Yes, it is silent, and it's not a problem for you, for the regulations or statutes elsewhere use the word itemization. Well, except that here, Your Honor, the – both the CFPB and the statutes say, go look back at the requirements for account opening, and the requirements for account opening require itemization. No, what they say is go look back for the subjects about which you must give notice. It doesn't talk about format. And in fact, if it did incorporate format, and it doesn't, it would talk – everything would have to be in the form of a table, and that's how it is at account opening. But the regulations and statutes are clear that that tabular format is only required on two occasions, when you open the account and on the bill. Well, granted, the tabular format may not be necessary. However, you know, you don't have to do an actual chart. But the information that has to be in there, in comment 60B2-2, talks about what has to be in the initial account opening. And it says, in relevant part, issuing a card to each primary cardholder, not authorized users, is considered a basic membership privilege, and fees for additional cards beyond the first card on the account must be disclosed as a fee for issuance or availability. Thus, a fee to obtain an additional card on the account beyond the first card, so that each cardholder would have his or her own card, must be disclosed in the table as a fee for issuance or availability under 1026-60B2. At the account opening stage, and again, you have to do it in the bill, which as Judge Gambrow read, was done here. We are in the renewal provisions, and the renewal provisions don't have any kind of like granular requirements, am I correct, by their plain terms? No, I understand. We're making an argument that by implication, the information has to be in there. You're relying on the reg 1026-60, which is the solicitation of customers, and the relevant provision appears to be 1026.9, which relates to the renewal notice. I don't think 1026.9 helps you in that regard. If this were an initial solicitation, yes, this isn't. This is a renewal. Your Honor, both the interpretations, the official interpretations, and the statute say, go back and look at, go back and look at 1026-60 for what should be in there. Granted, it doesn't require a chart, but the information that should be in there. Comment 9B. Go ahead. I'm sorry. Your argument hinges on comment 60B2. Okay. So you've got commentary here, but what you just mentioned the statute. Do you have anything in the statute or from the Regulation Z itself that you think demands this itemization? Well, it would be, Your Honor, it would be 1026-60B2. Any annual or other? 60B2. Right. I accidentally, on page 9 of my reply brief, I accidentally cited it as 60B1. It's actually 60B2. 60B2. Little one. Any annual or other periodic fee, how frequently it will be imposed, and the annualized amount of the fee. Is the itemization in there? Annualized, yes. Itemization, no. Right, but it also says any annual or other periodic fee that may be imposed for the issuance or availability of a credit or charge card, including any fee based on account activity or inactivity. So it's using the singular for availability of a credit charge. It implies that it could be a single fee disclosed. It doesn't say anything about breaking it out or putting it in a tabular format or anything else. In addition, there's rules of construction for this regulation, and it says the singular shall be viewed as the plural and the plural for the singular, and that's 1026.2B1. So I knew you were hinging on the A card stuff, but I don't know how you reconcile that definition with the regulations rules of construction. Your Honor, I'm not sure that you can necessarily. I mean, it does use the singular. It does use the singular, and you run into a problem with, okay, we have 450 for this card. We have 75 for that card. If you start saying, you know, no one's disputing that on the initial account opening, which is 1026.6B2, you have to break it down. Okay? So I'm not sure that. There is a line in all of these between the account opening and the renewals, and Judge Schwartz rightly hit on this. So what is there that should make us disregard or cross that firewall between renewal notices and the initial solicitation? Well, there's. That whole table. We've all gotten the solicitation. Right. We know the box. We know the couple columns, all that. And there's nothing that applies that stuff to renewals. Okay. The chart is not applied to renewals. That doesn't mean the information doesn't have to be in there. Okay? Because 15 U.S.C. 1637 C1A Romanet II I mandates the renewal notice provide the information described in subsection C1A or C4A. Okay? That would apply if the accounts were renewed. Okay? That's from. I'm at 1637 C1A Romanet II. You said big I. Well, hang on. Here I am. I'm looking at this. No, actually, it's 16. It should really be 1637 D1B. Excuse me. Let me just pull up 1637 D1B. Disclosure prior to renewal. The information described in subsection C1A or C4A of this section that would apply if the account were renewed subject to subsection E of this section. Okay, that's the disclosure prior to renewal section. It's 15 U.S.C. 1637 D1B. D1B, the information described would apply if the account were renewed subject to subsection E. So the annual fee requirement is incorporated into the notice of renewal. Yes. But it says it has to be clear and conspicuous disclosure. What is there that turns clear and conspicuous disclosure into the same format and breakdown requirements? Well, I would argue that it's not clear and conspicuous if you've lumped it all together. If the person looking at it says, you know, reads your annual membership fee in the amount of 525 will be billed on February 1st, 2020, there's nothing to indicate in there that it relates to more than one card or that it relates to the additional card. As far as our client was concerned, he was getting a bill for $525 for his one renewal card. He did get a disclosure that broke it out separately. You're just saying both of them didn't. I'm saying both of them didn't, and this is the one, the annual renewal fee is what relied upon it. And the second one was ambiguous. I understand it said annual membership fee, but annual membership fee, you're sitting there going, is that the additional card? What's that for? You don't quite know what it's for. He has to know what it's for. He has to know what it's for. I mean, he's the one who paid it. He made the option to put it on the card to begin with the $75, right? Well, he, when he initially opened the account, he opened, he got one card for himself and one card, I believe it was for his spouse. And that was the, you know, then he didn't think about it, and then. That was the term of his arrangement with the credit card company. And the renewal notice must reflect the terms actually in effect at the time of renewal. Whether he thought about it or not, he knowingly entered an agreement for himself as a primary and authorized user. The term was paid, the fee. That was disclosed. How is there a violation of TILA here? Your Honor, I don't believe that it was adequately disclosed. I don't think that annual membership fee, after having received that notice that said your renewal fee is $525, I don't believe that's adequate disclosure. Okay. Well, we'll have you back on rebuttal. Okay. Good morning, Your Honor. Noah Levine for Defendant Athlete JPMorgan Chase Bank. I am happy to pick up on either of the issues. I do think that the clearest issue is on the merit. So maybe what I will do is I'll start briefly on standing just to make sure you know since it is jurisdictional. And our argument on standing is simple. It's a plausibility argument. And it gets to Judge Ambrose's question. It's not plausible that plaintiff's payment of the $75 in February 2020, after he received the billing statement that gave him the breakdown that he asked for, can be, to use the language of standing, fairly traced to the December 2019 billing statement that said we will bill you in two months. Because that statement was simply what Truth in Lending Act calls a renewal notice. It is a notice that there is a fee coming that we will charge you. But that notice told him if you want to keep your account open, you've got to pay the full amount on this notice. If you look at the language on the front of the document in which the notice appeared and you flip it over, there's a little tiny print that tells the cardholder what they need to pay to keep that account open. And so that's where your adversary's point is. That's where the injury happened. I was confused by that, and I was acting in reliance on that. And that's where I, as a result, paid that amount. I think there's one subtle distinction with what you said. I think 99% of what you said is right. It said that, you know, an annual fee has to be paid in order to keep the account open. It said that the annual fee is $525. But to be clear, it did not say you owe us $525 right now. It said that we are in, essentially, in the way the TILA disclosure regime worked, it said we are giving you notice, that we are going to give you a billing notice in two months that says $525 is free, is due. That's like kind of, that's why I think it's like the Struble case where it was about, it's essentially, can you plead concrete injury from a notice about a future notice, when it could be that that future notice will actually solve all of the issues? As a deft, least sophisticated consumer, why isn't it plausible that, okay, I looked at this disclosure two months before, and maybe I'm not going to read the one that comes later quite as closely, and maybe I'll misunderstand as a result of the earlier, more ambiguous or less clear one? So two points on that. First of all, I don't think it's plausible, both of these are billing statements. I don't think it's plausible to come in and say, I paid the utmost attention to the renewal notice on the one billing statement, but I don't pay any attention to the actual charges when I get them. And to Judge Ambrose's point, the only way that you can pay the charge, which is what he pleads, he pleads I paid it in February 2020, is by seeing the charge. But that's because he was told that if he didn't pay, he'd lose his rights to that account. For the 450 and the 75. But my second point, Judge Bevis, was going to be, look, if your belief is that at the least sophisticated consumer, this is enough to get over the standing line, I don't think our time is well spent like going back and forth on this, because I do think on the merits, I think this is a pretty clear case. And so I want to push it. If he had the understanding or misunderstanding that if he did not pay the full 525, he lost the account, is there anything that should have been on that notice that says these are not only separate, but the 450 is what relates to you personally? No, there is nothing that requires that. That's the merits question, is what does the renewal notice requirement say? I've gone to the merits. And so, yes, on 1026.9, look, the truth is, both the statute and the regulation require us to disclose the annual fee, quote, that would apply if the account were renewed. Not that could, not that may, but that would apply. And the Chase card member agreement, if you look in volume two of the appendix at A33, provides for a single annual membership fee, the amount of which depends on whether or not you have added a card. There is no dispute in this case that the annual membership fee on this account was $525. So why was it broken down, as Judge Amber pointed out to your adversary, in two different annual membership fees on the statement in February? Well, as we have pointed out, there is an itemization requirement in the section of the Truth in Lending Act, Regulation Z, that applies to the billing statements. Would we have an argument that maybe we didn't need to itemize the components? Yes, perhaps, but why would you take that risk? So it is there because there is a separate provision. So we disclosed exactly what the Truth in Lending Act and Regulation Z require, which is the annual fee that would apply if the account were renewed. There are a couple statements somewhere in his briefs that seem to say, that's not fair, that wasn't really an annual membership fee. That's wrong. That is what, look at A33 in the appendix, that is exactly how the card member agreement provides, and it is a paramount principle of the Truth in Lending Act that disclosures must reflect the terms of the legal obligation between the parties. That's 1026.5C. And, as Judge Schwartz noted, that paramount principle is repeated specifically with respect to the renewal notices, where in Comment 93, it says that the renewal notices must reflect the terms actually in effect at the time of renewal. And I don't think going to read the rest of that comment, as my opposing counsel did, helps him at all. The example that it gives there is that it says that if you're an employee that's getting the lower rate, what you have to disclose is the lower rate, quote, actually charged. It says you may, if you want, show the rate that you could get other than that, but it says what's actually charged. Now, the second reason I think that we win is the canon of construction that says, you know, if it's in one section, that shows that the drafters intended that it not be in the other section. This case was brought on the principle that we needed to individually itemize the fee. There is no itemization requirement in 1026.9 or any of the renewal notice requirements. But there is in the billing disclosure. And the fact that it's there and it's not in the renewal notice is very strong evidence that the drafters intended for that absence to be intentional. Can I ask you about Rule 60b-2 for a moment? It speaks about primary cold hoarders and it excludes authorized users. What is the difference and does it matter in this case? Are you talking about the, I'm sorry, which section are you talking about? I mean, it's, I mean. The comment? The comment 60b-2 at paragraph 2. Yes, I find that comment utterly confusing as well. It seems like the first half and the second half are kind of at war with one another. But more importantly, I did want to get to this whole point about comparing section 9 and section 60 or, you know, 1026.9 and 1026.60. Essentially, my opponent's argument is that because the renewal notice requirements in the statute and the regulation refer back to the subjects that are at the solicitation stage, we should just take the solicitation stage requirements and just transpose them to the renewal notice. That's wrong for at least three reasons. First of all, it doesn't get them anywhere because there's no itemization requirement there either. But second of all, to the extent that cardholders do disclose a separate fee, so, for example, in this comment, if you do disclose a separate, you know, additional card fee or that component of your annual fee, it doesn't have to do with any regulatory or statutory requirement for itemization. It has to do with the timing and the sequence of disclosures. At the time before there's ever a relationship between the two people, you are disclosing the annual fee. I can't say $525 because we don't even know if they sign up for the account whether they're going to add the card. I also can't do that because the regulation at that stage says that I have to disclose the annual fee, quote, that may be imposed. So I have to – we're in a world where we don't know what's going to happen. Once we get to renewal, now it says instead you have to disclose the annual fee that would apply if the account were renewed. That is all the difference, and the district court understood that and applied that, and that follows Comment 93. But there's another reason, too, why you shouldn't just put these two things together. The CFPB in its regulation and its commentary has made it abundantly clear that disclosure at the renewal stage is just not intended to be as comprehensive or prominent as the solicitation stage. And to take a few examples, the renewal notice doesn't have to be in a tabular format. It doesn't have to be in a prominent location. It doesn't even have to be in a form that the consumer can retain. That's all in Comment 9E2. In addition, it can be provided on and combined with a periodic statement. That's both the regulation, 1026.9E2, and Comment 9 – this gets really confusing here. There is a Comment 9E with numbers after it. There is also a Comment 9E in parentheses, 2 in parentheses, and then numbers after it. So I'm referring to Comment 9E2-1 and 2. And you can even preprint the annual review notice on all of your periodic statements and just pair it within the relevant month. This is when we're going to bill you. So in short – by the way, this all comes from the fact that this is a notice. This isn't like a full disclosure of all the contract terms. This is a notice that it's coming due. Get ready. And so it's definitively not supposed to be on par with that. So for all of those reasons – oh, and the final reason I would add is that the Truth in Lending Act is incredibly complex. It is highly technical. I mean, we are now talking about it in the questions just before. We were talking about Roman numerals that are nested under Romanets under subparagraphs, which are nested under paragraphs and subsections. This is incredibly technical stuff that the Supreme Court has noted creditors need sure guidance to get through this. They need a compass to get through this. And for that reason, courts have been very reluctant to add a particularized disclosure requirement that isn't found in the text of the statute. The position here is that the bank should be on, you know, potentially exposed to a million dollars in statutory damages because it failed to define an itemization requirement out of all of these regulations that isn't anywhere in its clear text. The notice gave an amount of money telling the recipient of the notice, you need to pay this amount to keep the account open, correct? You're talking about the renewal notice now? Am I correct that that's what it says? It's an amount of money and you flip it over and it says this is what you've got to pay to keep the account open. It says this is what you will have to pay after the billing statement on which we list the charges. Right. That's what it specifically says. But to keep the account open, correct? Yes, that is what it says, correct. So the recipient reads this, it's $500 plus I've got to pay. What would have happened if in February you only paid for the $450? Would the account have closed? Well, under the card member agreement, again, this has never been, this part has never come up in this litigation, but under the card member agreement, if you want to close the card that you've given to an authorized user, first of all you have to give notice to the bank to do that. This is at, let me make sure I direct you to the right place in the record, this is at A36 is where the card member agreement is. You have to give notice that you're going to take that card away. And the bank has the option of closing the account at that point and requiring that a new account be opened with a new account number, given the risks of having had a credit card. So from your point of view, the full amount of money, putting together the account agreement, the creditor's credit agreement, and the notice, you're saying it was accurate because under our terms, to keep this account open, you've got to pay the full freight. Yeah, so what I'm saying is do I know what would have happened if you made a call and you said, hey, give me a break, I'd really like to keep it open, I've got the card back, I cut it in half, I sent it back to you. Would they require it? I don't know. But the Truth in Lending Act goes off of the legal obligations of the party. And the legal obligations in the party here talk about the fact that if you want to take a card away, we may need to close the account. So, yes, you would have to pay the whole thing. That is the correct disclosure. I also want to add, there has been – But that was the term. I'm sorry to interrupt you. Yes, yes, exactly. But I'm going back to the language of the term at issue at the time of renewal pursuant to the credit card agreement was this was the amount you agreed to pay. We tell you in the terms of the agreement, failure to pay the full amount allows us to close the account. That's correct, yes. But I also want to make clear that the only argument, that the only thing we have ever been alleged to have violated, and it's in the amended complaint, is that we didn't disclose the right amount, that we didn't break down the amount. There has never been any argument that what you have kept referring to that is on the back that describes what you have to do to avoid the fee. There has never been an argument that there was anything wrong. Are you saying that if he paid $450,000, wouldn't somebody have the discernment to say, okay, he's paying only for himself. We're not going to in any way cancel that account. He's got an additional account he didn't pay for. I mean, certainly the in-house people almost certainly would know that, would they not? Well, sure, a couple answers to that. First of all, there are not two accounts. There's only one account. There's two cards that access the same account. Second of all, sure, that's what my answer to Judge Schwartz was. Like, if that actually happened. Yeah, but my question is the same. You would just cancel the second card, would you not? Oh, I know your question is the same. That's why the second answer is, would they have done it? I don't know that they would have required them. You're right. Wouldn't they as a customer service want to do that? I imagine so. They're not in the business of just saying, I don't want customers. Exactly. But what we're talking about here is the Truth in Lending Act. And what does the disclosure need to be on the back? And the legal terms of the parties as specified in the card member agreement say that if you don't want to pay the annual fee, I mean, I'm sorry, right, if you don't want to pay the annual fee, you have to close the account. And it specifically talks about if you have an additional card for an additional user, that the bank has the discretion to be able to close the account and open a new account instead. So it would not be accurate, since the bank has that discretion, to say you may have a disclosure on the other side that says you can just pay the $450. Don't worry about it. Okay.  Thank you. Your Honors, if I may, I'd first like to address the issue of the differences between the initial account opening disclosures and the renewal notice. There was mention about that you're not required to give a copy that can be retained. You're not required to, on the renewal notice, you're not required to put the notices in a special location, give the tabular format. Part of that is because the way things work when someone applies for credit, you go to, for instance, you know, Macy's and you apply for a credit card. You're filling out the form, you're submitting the application, and then they give you something which lets you know the terms that you just applied for. Okay? So you're not actually walking home with the whole contract. When you're getting a periodic statement, it's something different. When you're getting a renewal notice, it's something different. You're actually getting a copy that you get to keep. So you don't necessarily have all the same requirements. Our client alleged in the complaint that he relied upon the 525, that he thought if he didn't pay the 525 that his account would be closed. He didn't know what the breakdown was. We're talking a year after he opened the account. That number was actually accurate. If you read the back of the document, which says you've got to pay the amount to keep the card open. Yeah, but it doesn't say that. It wasn't a bad disclosure. It was an accurate disclosure. The full freight needed to be paid. Well, the full freight needs to be paid if you want to keep both accounts, both cards open. Okay? But I believe the representation was the two cards here dealt with a single account. Am I correct? Yes, they did deal with a single account. So why would you need to itemize in this particular context when you needed to pay the full amount, because it was a contract term, in order to keep the account open? Well, you need to pay the full amount in case you want to renew it. I'm not sure. I mean, we've had the representation here. I'm not sure that you necessarily had to pay the full amount if you wanted to keep the account open. I'd have to go back and look at that. Okay. But it's a renewal fee, and, in fact, the fact that it was broken down on the separate thing, that it was broken down on the February statement, if the client had realized what was going on, presumably he could have picked up the phone and said, look, I'm paying the 450. I'm not paying the 75. I've had no reason for the secondary card on the account. I want to keep my account open, but I see absolutely no reason to continue with both cards. But what was represented to him on the earlier one was, you want to keep this account open, period. You've got to pay the full 525. Okay. With respect to that section on the terms of the, what was it, it was the section cited by the court below, the terms, the material terms as of the date of the renewal, there's ambiguity there. I don't see it as helping either side, to be honest. Isn't your better argument that on the second statement, he's under the impression that if he doesn't pay the full 525, he loses his entire account? Yes. That is my argument, Your Honor. You just stated it better than I did. Thank you. Unless there are any additional questions. Thank you. Thank you, Your Honor. Thanks, all counsel, for their arguments. We appreciate them. And the Court will take the matter under advisement. And the Court has concluded its morning session. Thank you.